IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **NELSON MOODY,** ) | |
| ) | No. |
| **Plaintiff,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| v. ) | |
| ) | |
| **ADVOCATE CHRIST MEDICAL** ) | |
| **CENTER** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

### INTRODUCTORY STATEMENT

1. Plaintiff, Nelson Moody, brings this action to redress racial discrimination by employer Advocate Christ Medical Center against Plaintiff in connection with his employment. Plaintiff brings this action under 42 U.S.C. § 1981.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court is the appropriate venue under 28 U.S.C. § 1391(b), in that the Defendants are subject to personal jurisdiction in this District, and the events giving rise to this Complaint occurred in this District.

### PARTIES

4. Plaintiff Nelson Moody ("Mr. Moody") is a citizen of the United States, a resident of Chicago, and a former employee of Advocate Christ Medical center.

5. Defendant Advocate Christ Medical Center ("Advocate") is a 694-bed hospital in Oak Lawn, Illinois.

## STATEMENT OF FACTS

6. Nelson Moody ("Mr. Moody") was hired by Advocate Christ Medical Center ("Advocate") on May 23, 2011, and worked as a Housekeeper until his termination.

7. Throughout his course of employment at Advocate, Mr. Moody received performance evaluations that indicated he either met or exceeded expectations.

8. Mr. Moody's performance reports describe him as "one of the best team players we have," "a great team player who shows great compassion toward team mates and patients," and someone "who works toward team goals and is always willing to assist whenever he is needed."

9. On October 3, 2013, Mr. Moody approached David Velazquez ("Mr. Velazquez"), a co-worker, to discuss a work-related disagreement Mr. Velazquez was having with Mr. Moody's brother, who also worked at Advocate.

10. During this interaction, Mr. Moody told Mr. Velazquez, "Dave you mixed me up in something I had nothing to do with," meaning the disagreement between Mr. Velazquez and Mr. Moody's brother. Mr. Moody also told Mr. Velazquez that he thought Mr. Velazquez was handling the situation unprofessionally.

11. Mr. Moody neither cursed at nor made threats toward Mr. Velazquez.

12. A departmental supervisor, Susan Castillo ("Ms. Castillo"), claims to have overheard the conversation between Mr. Moody and Mr. Velazquez.

13. Ms. Castillo claims that Mr. Moody said to Mr. Velazquez, "I am not my brother, I am from the hood."

14. Mr. Moody is African American.

15. Mr. Velazquez and Ms. Castillo are Hispanic.

16. On October 4, 2013, Mr. Moody was called to Human Resources and told he was suspended pending an investigation of the conversation with Mr. Velazquez that occurred the previous day.

17. On October 8, 2013, Ms. Castillo called Mr. Moody's cell phone to inform him that he was terminated from his employment, and that he was to be escorted by security to clean out his locker the following day.

18. Mr. Moody was never given an opportunity to explain the incident or rebut the allegations against him.

19. On or around October 7, 2013, Mr. Moody called Human Resources to request a review of the video recording of the conversation with Mr. Velazquez, which occurred in front of security cameras, but his request was denied.

20. Mr. Moody was terminated under the Advocate policy forbidding Workplace Violence, which includes threats. Advocate defines a threat as "an implied or express intent to inflict physical harm and/or actions that a reasonable person could perceive as leading to physical harm."

21. An example of an implied threat as outlined in the Advocate policy is, "Employees who kill their supervisors have the right idea."

22. Even if Advocate honestly believed Ms. Castillo's version of the conversation, Mr. Moody's words did not meet the definition of a threat under Advocate policy.

23. The words "I am from the hood" are, on their face, innocuous, and in no way imply an intent to inflict physical harm.

24. Any association of the words "I am from the hood" with violence or a threat of violence are the result of unfounded and invidious racial stereotypes.

25. Advocate did not consistently uphold its Workplace Violence policy with other associates in the department.

26. Advocate did not terminate Caucasian employees under the same Workplace Violence policy who were involved in an altercation involving actual physical violence.

27. Mr. Moody was terminated as a result of intentional racial discrimination. His discharge was based on an unconfirmed and unreviewed account of an incident that, even accepting the version denied by Mr. Moody, does not rise to the level of a threat unless the person reviewing the incident considers race and racial stereotypes.

28. Mr. Moody was a devoted employee of Advocate and suffered both financially and emotionally from his termination.

## CLAIMS FOR RELIEF

### Count I – Discriminatory Termination

29. Mr. Moody incorporates and realleges paragraphs 1-28, above, as if fully set forth herein.

30. Defendants terminated Mr. Moody's employment because of his race, African-American.

31. Defendants' termination of Mr. Moody's employment constituted intentional and purposeful discrimination.

32. As a result of Defendants' discriminatory termination of Mr. Moody's employment, he suffered humiliation, embarrassment, and severe emotional distress, as well as loss of employment.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff, Nelson Moody, prays that this Court

A. Award Plaintiff lost wages and lost benefits of employment;

B. Order that Plaintiff be reinstated, or, if reinstatement is not feasible, award him future lost wages;

C. Award Plaintiff compensatory damages for the damages he suffered from Defendants' discriminatory conduct;

D. Award Plaintiff punitive damages;

E. Award Plaintiff pre-judgment interest;

F. Award Plaintiff his reasonable attorney's fees and costs of litigation, including any expert witness costs;

G. Award Plaintiff equitable relief in the form of a tax component to offset negative tax consequences of lump sum damages;

H. Grant such other relief as this Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff demands a jury trial on issues properly triable to a jury.

Dated: July 9, 2015

Respectfully submitted,

/s/ _Timothy Huizenga_
Attorney for Plaintiff

Timothy Huizenga
LAF
120 S. La Salle, Ste. 900
Chicago, IL 60603
(312) 347-8377